**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:17-cv-02038

DAVID SLAUGHTER, on behalf of himself
and those similarly situated;

       Plaintiff,

v.

SYKES ENTERPRISES, INC. D/B/A SYKES HOME
POWERED BY ALPINE ACCESS;

      Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT, SERVICE PAYMENTS,**
**<u>AND ATTORNEYS' FEES AND COSTS</u>**

---

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

I. FACTUAL AND PROCEDURAL BACKGROUND...................................... 2

    A. Factual Allegations ............................................................................ 2

    B. Overview of Litigation....................................................................... 2

    C. Overview of Investigation and Settlement Negotiations ...................... 5

II. SUMMARY OF SETTLEMENT TERMS...................................................... 6

    A. The Settlement Fund .......................................................................... 6

    B. Settlement Notice Procedure.............................................................. 6

    C. Allocation Formula ............................................................................ 8

    D. Service Payments ............................................................................... 8

    E. Settlement Administration .................................................................. 8

    F. Attorneys' Fees and Litigation Costs ................................................. 9

ARGUMENT ............................................................................................................. 9

I. The Court Should Approve the Settlement........................................................ 9

    A. The Lawsuit Involves a Bona Fide Dispute....................................... 10

    B. The Proposed Settlement Is Fair and Equitable to All Parties Concerned. .......... 12

        1. The Proposed Settlement Provides Adequate Compensation to Collective Members. .............................................. 12

            a. The Proposed Settlement Was Fairly and Honestly Negotiated. ................................................ 12

                i. Experienced Counsel Conducted the Settlement Negotiations. ........................................ 13

                ii. Plaintiff's Counsel Vigorously Prosecuted the Claims. .............................................. 13

                iii. There Was No Collusion Between the Parties................. 13

            b. Serious Questions of Law and Fact Exist Which Place the Ultimate Outcome of the Litigation In Doubt.............................. 14

            c. The Value of An Immediate Recovery Outweighs the Mere Possibility of Future Relief after Protracted and Expensive Litigation....................................................... 15

|  |  | d. | The Parties Believe That the Settlement Is Fair and Reasonable. | 16 |

|  | 2. | The Proposed Settlement Does Not Frustrate FLSA Policy Rationales. | 16 |

| II. | The Service Payments Are Reasonable. | 17 |

| III. | The Court Should Approve Plaintiff's Requested Attorneys' Fees and Expenses. | 20 |

|  | A. | Plaintiff's Counsel Expended a Reasonable Number of Hours. | 22 |

|  |  | 1. | This Complex Case Required Significant Time. | 23 |

|  |  | 2. | Plaintiff's Counsel Pursued Several Strategies to Secure the Best Outcome for Collective Members. | 23 |

|  |  | 3. | Defendant's Conduct Contributed to the Hours Expended by Plaintiff's Counsel. | 24 |

|  |  | 4. | Plaintiff's Counsel Avoided Duplication of Services. | 24 |

|  |  | 5. | Plaintiff's Counsel Will Spend Additional Time on the Litigation After the Court Approves the Settlement. | 25 |

|  | B. | Plaintiff's Counsel's Rates Are Reasonable By Any Measure. | 25 |

|  |  | 1. | Plaintiff's Counsel's Requested Fee Is Reasonable When Calculated at District of Colorado Rates. | 25 |

|  |  | 2. | Plaintiff's Counsel Requested Fee is Reasonable When Calculated At Their Actual Hourly Rates. | 26 |

|  |  |  | a. | Plaintiff's Counsel Provided Specialized Expertise Not Found in the Denver Metro Area. | 27 |

|  |  |  | b. | This Case Required Considerable Financial Resources. | 29 |

|  |  |  | c. | Local Attorneys Rarely Pursue Cases of This Scale. | 30 |

|  | C. | The Results and Benefits Conferred Upon Collective Members Justify the Fee Requested. | 30 |

|  | D. | Plaintiff's Counsel's Expenses Are Reasonable. | 31 |

| CONCLUSION | 31 |

# TABLE OF AUTHORITIES

CASES                                                                                                                    PAGES

*Aragon v. Clear Water Prod. LLC*,
    No. 15 Civ. 02821, 2018 WL 6620724 (D. Colo. Dec. 18, 2018) ........................................... 26

*Baker v. Vail Resorts Mgmt. Co.*,
    No. 13 Civ. 01649, 2014 WL 700096 (D. Colo. Feb. 24, 2014) ................................. 10, 16, 21

*Barbosa v. Nat'l Beef Packing Co., LLC*,
    No. 12 Civ. 2311, 2015 WL 4920292 (D. Kan. Aug. 18, 2015) ............................................. 31

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................... 23, 27, 28

*Blocklin v. Black Pepper Pho, LLC*,
    No. 14 Civ. 1252, 2014 WL 6819894 (D. Colo. Dec. 3, 2014) ....................................... 17, 20

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945) ....................................................................................................... 16, 17

*Burke v. Alta Colls., Inc.*,
    No. 11 Civ. 2990, 2014 WL 2882807 (D. Colo. June 25, 2014) ............................................ 11

*Cannon v. Time Warner NY Cable LLC*,
    No. 13 Civ. 2521, 2015 WL 4498808 (D. Colo. July 24, 2015) ............................................ 20

*Case v. Unified Sch. Dist. No. 233, Johnson Cnty. Kan.*,
    157 F.3d 1243 (10th Cir. 1998) ............................................................................................ 22

*Castorena v. El Trompito, Inc.*,
    No. 14 Civ. 326, 2014 WL 5564339 (D. Colo. Nov. 3, 2014) ............................................... 22

*Chavez v. Excel Servs. Se., Inc.*,
    No. 13 Civ. 3299, 2015 WL 4512276 (D. Colo. July 27, 2015) ............................................ 20

*Clem v. Keybank, N.A.*,
    No. 13 Civ. 789, 2014 WL 1265909 (S.D.N.Y. June 20, 2014) ............................................ 28

*Clements v. Serco, Inc.*,
    530 F.3d 1224 (10th Cir. 2008) ............................................................................................ 11

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) .......................................................................................... 28

*Davis v. Crilly*,
    292 F. Supp. 3d 1167 (D. Colo. 2018) .................................................................................. 10

iv

*Dees v. Hydradry, Inc.*,
   706 F. Supp. 2d 1227 (M.D. Fla. 2010) .......................................................... 17, 20

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................................ 14

*Fails v. Pathway Leasing LLC*,
   No. 18 Civ. 0308, 2018 WL 6046428 (D. Colo. Nov. 19, 2018) ......................... 10

*Fulton v. TLC Lawn Care, Inc.*,
   No. 10 Civ. 2645, 2012 WL 1788140 (D. Kan. May 17, 2012) ............................ 14

*Garcia v. Tyson Foods, Inc.*,
   770 F.3d 1300 (10th Cir. 2014) .......................................................................... 21

*Gentrup v. Renovo Servs., LLC*,
   No. 07 Civ. 430, 2011 WL 2532922 (S.D. Ohio June 24, 2011) ......................... 23

*Hall v. ProSource Techs., LLC*,
   No. 14 Civ. 2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ......................... 25

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................... 24

*Hobbs v. Tandem Envtl. Solutions*,
   No. 10 Civ. 1204, 2012 WL 4747166 (D. Kan. Oct. 4, 2012) ............................. 14

*Houser v. Pritzker*,
   28 F. Supp. 3d 222 (S.D.N.Y. 2014) .................................................................. 28

*In re Molycorp, Inc. Sec. Litig.*,
   No. 12 Civ. 292, 2017 WL 4333997 (D. Colo. Feb. 15, 2017) ............................ 14

*Okla. Intrastate Transmission, LLC v. 25 Foot Wide Easement*,
   908 F.3d 1241 (10th Cir. 2018) ...................................................................... 27, 30

*Jacob v. Duane Reade, Inc.*,
   No. 11 Civ. 160, 2017 WL 1968383 (S.D.N.Y. May 5, 2017) ............................. 29

*Kersch v. Bd. of Cty. Comm'rs of Natrona Cty., Wyo.*,
   851 F. Supp. 1541 (D. Wyo. 1994) ..................................................................... 27

*Large v. Fremont Cty., Wyo.*,
   No. 05 Civ. 0270, 2013 WL 12342417 (D. Wyo. Sept. 20, 2013) .................... 27, 30

*Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*,
   No. 09 Civ. 1543, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ....................... 18, 20

*Lynn's Food Stores, Inc. v. United States,*
  679 F.2d 1350 (11th Cir. 1982) ............................................................ 10

*Malchman v. Davis,*
  706 F.2d 426 (2d Cir. 1983) ................................................................... 13

*Malloy v. Monahan,*
  73 F.3d 1012 (10th Cir. 1996) ............................................................... 26

*Manohar v. Sugar Food LLC,*
  No. 16 Civ. 02454, 2017 WL 3173451 (D. Colo. July 26, 2017) ..................... 12, 21

*Perez v. Allstate Ins. Co.,*
  No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ..................... 28

*Pliego v. Los Arcos Mexican Rests., Inc.,*
  313 F.R.D. 117 (D. Colo. 2016) ............................................................ 19

*Puglisi v. TD Bank, N.A.,*
  No. 13 Civ. 637, 2015 WL 4608655 (E.D.N.Y. Jul. 30, 2015) ..................... 28

*Qwest Comms. Int'l, Inc. Sec. Litig.,*
  625 F. Supp. 2d 1133 (D. Colo. 2009) ....................................................... 15

*Shaw v. Interthinx, Inc.,*
  No. 13 Civ. 1229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ............... passim

*Solis v. Top Brass, Inc.,*
  No. 14 Civ. 00219, 2014 WL 4357486 (D. Colo. Sept. 3, 2014) ..................... 10

*Stransky v. Healthone of Denver, Inc.,*
  No. 11 Civ. 02888, 2013 WL 5951493 (D. Colo. Nov. 7, 2013) ..................... 31

*Strauch v. Computer Scis. Corp.,*
  No. 14 Civ. 956, 2018 WL 5870337 (D. Conn. Nov. 9, 2018) ..................... 29

*Tennille v. W. Union Co.,*
  No. 09 Civ. 00938, 2013 WL 6920449 (D. Colo. Dec. 31, 2013) ..................... 20

*Thompson v. Qwest Corp.,*
  No. 17 Civ. 1745, 2018 WL 2183988 (D. Colo. May 11, 2018) ..................... 9, 19

*Whittington v. Taco Bell of Am., Inc.,*
  No. 10 Civ. 1884, 2013 WL 6022972 (D. Colo. Nov. 13, 2013) ..................... 12

*Williams v. Mohawk Indus., Inc.,*
  No. 04 Civ. 0003, 2010 WL 11500061 (N.D. Ga. July 22, 2010) ..................... 14

*Wright v. U–Let–Us Skycap Servs., Inc.*,
  648 F. Supp. 1216 (D. Colo. 1986) ........................................................................ 31

*Yuzary v. HSBC Bank USA, N.A.*, No.,
  12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ..................................... 28

*Zorrilla v. Carlson Rests. Inc.*,
  No. 14 Civ. 2740, 2018 WL 1737139 (S.D.N.Y. Apr. 9, 2018) ............................... 29

STATUTES

29 U.S.C. § 216(b) ......................................................................................... 2, 31

C.R.S. §§ 8-4-101 to 8-4123 ............................................................................... 2

RULES

Federal Rule of Civil Procedure 23(e) ................................................................. 12

Federal Rule of Civil Procedure 41(a)(1) .............................................................. 2

REGULATIONS

7 C.C.R. 1103-1:1 to 1:22 ................................................................................... 2

**INTRODUCTION**

Plaintiff David Slaughter (the "Named Plaintiff" or "Plaintiff") and Defendant Sykes Enterprises, Inc. d/b/a Sykes Home Powered by Alpine Access ("Sykes" or "Defendant"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief.  The settlement, which followed a thorough investigation, motion practice, and formal and informal discovery, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona fide dispute, is fair and equitable to all parties concerned, and contains a reasonable award of attorneys' fees.

Plaintiff Slaughter respectfully requests that the Court issue an order: (1) approving the settlement set forth in the Joint Stipulation of Settlement ("Stipulation"), attached as Exhibit A to the Declaration of  Justin M. Swartz ("Swartz Decl.");[1] (2) approving the proposed Notice of Settlement ("Notice") (attached as Exhibit A to the Stipulation) and directing its distribution together with the Settlement Checks; (3) approving Service Payments to the Named Plaintiff and each of the six Opt-In Plaintiffs who were deposed, participated in discovery, and/or submitted declarations in connection with this action;[2] (4) approving Plaintiff's request for attorneys' fees, costs, and expenses; (5) incorporating the terms of the Stipulation; and (6) dismissing the Lawsuit.[3]

---

[1]    Unless otherwise indicated, all exhibits are attached to the Swartz Decl., and all capitalized terms have the definitions set forth in the Stipulation.

[2]    The six Opt-in Plaintiffs are Robert Gates, Melissa Crawford, Janice Meeks, Mary Powers, Kristie Melissa Wright, and Nicole Lagala (together with Named Plaintiff David Slaughter, the "Service Payment Recipients").

[3]    For the Court's convenience, a proposed Order is attached as Exhibit B to the Swartz Decl.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **Factual Allegations**

Named Plaintiff David Slaughter worked for Defendant as a Team Leader ("TL")[4] from

approximately November 2014 through approximately May 2015 in La Junta, Colorado.  ECF

No. 1 ("Compl.") ¶ 16.  Plaintiff alleges that Sykes violated the FLSA by improperly classifying

him and other TLs as exempt from federal overtime requirements and failing to pay them

overtime wages for hours that they worked in excess of 40 per workweek, even though the TLs'

primary duty was performing routine, non-exempt work.  *Id.* ¶¶ 5, 9, 18-19, 37, 72.  Defendant

denies that it committed any wrongdoing or violated any federal, state, or local laws pertaining to

payment of wages or hours worked and vigorously disputes the claims asserted in the litigation.

ECF No. 14 ("Ans.") ¶¶ 4-12, 64-89; *see also id.* ("Def.'s Affirmative Defenses") ¶¶ 4-22.

B.      **Overview of Litigation**

On August 24, 2017, Plaintiff filed this Lawsuit on behalf of himself and TLs nationwide,

alleging violations of the FLSA, C.R.S. §§ 8-4-101 to 8-4123 and Colorado Wage Order No. 29,

7 C.C.R. 1103-1:1 to 1:22 (collectively, "the Colorado Wage Laws").  *See* ECF No. 1 (Compl.).[5]

On October 6, 2017, Defendant filed an answer.  ECF No. 14 (Ans.).

On October 20, 2017, the Court scheduled an initial conference for December 21, 2017.

ECF No. 17.  After meeting and conferring before the initial conference, the parties briefed a

dispute regarding the scope of discovery prior to Plaintiff's anticipated Motion for Court-

---

[4]       "Team Leader" includes Team Leaders, Interim Team Leaders, Team Managers, Interim
Team Managers, and other exempt-classified employees who held similar roles variously titled.
[5]       This Lawsuit is the continuation of an action originally filed in the Middle District of
Florida, which was dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1) and refiled in
this District.  *See* Swartz Decl. Ex. C (Complaint in *Meeks, et al. v. Sykes Enter., Inc.*, No. 16
Civ. 3405 (M.D. Fla.)).

Authorized Notice Pursuant to 29 U.S.C. § 216(b) ("Notice Motion").  ECF Nos. 26, 34, 36.

Sykes asked the Court to delay briefing on the Notice Motion to permit Defendant to take written

discovery and depositions of the Named Plaintiff and six Opt-in Plaintiffs.  ECF Nos. 36, 37.

Plaintiff opposed this request.  ECF No. 34.

At the initial conference, the Court denied Defendant's request to depose the Opt-in

Plaintiffs but extended its deadline to respond to the Notice Motion until it received Plaintiff's

responses to Defendant's written discovery.  *See* ECF No. 38 ("Minute Entry for Scheduling

Conference"); ECF No. 42 ("Tr. of Rule 16(b) Scheduling Conference") 10:1-18.  The Court

also granted Plaintiff's request to serve written discovery.  *See* ECF No. 38 (Minute Entry for

Scheduling Conference).

Plaintiff filed his Notice Motion on December 20, 2017.  ECF No. 35.  The parties

completed briefing on the Notice Motion on February 16, 2018.  ECF No. 47.  Less than a month

later, on March 12, 2018, the Court granted Plaintiff's Notice Motion and conditionally certified

a collective action.  ECF No. 48 ("Conditional Certification Order").  On April 18, 2018, notice

issued to the Collective.

During the initial notice period, Defendant determined that it had inadvertently omitted

114 individuals from the data it produced to Plaintiff's Counsel.  The parties jointly requested an

additional notice period of the same duration as the initial notice period so that the 114

individuals had an opportunity to receive notice and a reminder postcard halfway through the

notice period.  *See* ECF No. 82.  The Court granted the parties' joint motion.  ECF No. 83

(Minute Order).

On June 20, 2018, the Court held a telephonic discovery hearing.  *See* ECF No. 86

(Courtroom Minutes).  At the hearing, Plaintiff made several oral requests regarding the notice

process.  The Court (1) granted Plaintiff's oral motion to permit notice by text message to both the 114 additional potential collective members Sykes had identified and to all previously identified potential collective members  who had not received any form of notice because their notices were returned as undeliverable by both mail and email; (2) granted Plaintiff's oral motion to extend the deadline to submit consent to join forms to September 24, 2018; and (3) denied Plaintiff's oral motion to compel production of the personal email addresses of potential collective members. *Id.*

Following the hearing, the parties met and conferred and agreed to streamline notice periods and send notice to the 114 individuals who Defendant had omitted from the data and to another 81 individuals who had not received any form of notice.  The parties jointly moved to consolidate the notice period and set the deadline to send  notice on July 27, 2018 with a return date of September 7, 2018.  *See* ECF No. 92 (Joint Mot. to Consolidate Notice Periods).  The Court granted the parties' joint motion for permission to send notice to both categories of potential collective members and extended the deadline to return consent forms to September 7, 2018.  *See* ECF No. 93 (Minute Order).

Plaintiff's efforts to implement the most robust notice that the Court would allow were successful.  Of the 1,328 individuals who received notice, 482 current and former TLs ultimately consented to join the Lawsuit.  Swartz Decl. ¶ 21.  This 34.9 percent participation rate is higher than usual for workers in similar positions in other cases.  *See* Ex. D (Declaration of Justin M. Parks) ¶ 4.

Defendant deposed Opt-in Plaintiffs Melissa Crawford and Robert Gates, and the parties exchanged discovery pertaining to the Named Plaintiff and several Opt-in Plaintiffs, including Opt-in Plaintiffs Crawford and Gates.  Named Plaintiff Slaughter and Opt-in Plaintiffs Robert

Gates, Melissa Crawford, Janice Meeks, Mary Powers, Kristie Melissa Wright, and Nicole

Lagala ("Service Payment Recipients") all responded to Defendant's written discovery.  Swartz

Decl. ¶ 25.

### C.    Overview of Investigation and Settlement Negotiations

Before initiating this action, O&G and co-counsel, SLG, conducted a thorough

investigation into the merits of the potential claims and defenses and conducted in-depth

interviews of multiple TLs.  *Id.* ¶ 26.  Plaintiff's Counsel focused their investigation on the

underlying merits of the potential collective action members' claims, the damages to which they

were entitled, and the propriety of collective action certification.  *Id.* ¶ 27.  Plaintiff's Counsel

also obtained and reviewed documents from the Named Plaintiff and several Opt-in Plaintiffs.

*Id.* ¶ 28.

On January 8, 2016, in an effort to initiate settlement discussions, Plaintiff's Counsel sent

Sykes a letter informing it about Plaintiff's wage and hour claims and inviting a pre-litigation

dialogue.  *Id.* ¶ 29.  Soon after, the parties agreed to toll the statute of limitations for potential

collective action members beginning on February 17, 2016 and to discuss whether to attend

private mediation.  *Id.* .  Having made little progress, on November 21, 2016, Plaintiff's Counsel

informed Sykes that Plaintiff would file a complaint, which he did on December 14, 2016 in the

Middle District of Florida.  *See id.* ¶ 30; Ex. C (*Meeks* Complaint).[6]

Despite Plaintiff's filing of a complaint, the parties agreed to leave the tolling agreement

in place and to mediate on March 10, 2017.  Swartz Decl. ¶ 32.  In preparation for the mediation,

Defendant provided Plaintiff's Counsel with class member personnel data, including payroll

---

[6]      Together with Plaintiff Slaughter, Meeks was a named plaintiff in the Florida case.
Meeks subsequently filed a consent to join in *Slaughter*.  ECF No. 20, Ex. B (Consent to Join).

data, its analyses regarding the classification of the TL position, job descriptions and training materials for the TL position, and other corporate documents. *Id.* ¶ 33. Defendant also disclosed that it had reclassified the TL position to non-exempt in or around November 2016. *Id.*

Plaintiff's Counsel analyzed the data and constructed a damages model. *Id.* ¶ 34. The parties also drafted mediation briefs setting forth their respective positions as to liability and damages. *Id.* ¶ 35. Plaintiff's Counsel shared their mediation brief and damages model with Defendant to allow Defendant to evaluate them. *Id.* ¶ 36.

On March 10, 2017, the parties attended a private full-day mediation in Atlanta, Georgia with Hunter R. Hughes III, Esq., an experienced and well-regarded wage and hour mediator. *Id.* ¶ 37. Although the parties negotiated in good faith at the mediation and over the next several weeks, no settlement was reached. *Id.* ¶ 38. On March 22, 2017, Plaintiffs voluntarily dismissed *Meeks* and filed this case thereafter. *Id.* ¶ 39; ECF No. 1 (Compl.).

While litigating this case, the parties continued to negotiate through multiple telephone conferences, some with the help of the mediator. Swartz Decl. ¶ 40. On November 2, 2018, the parties reached an agreement in principle. *Id*. ¶ 41. The parties continued to negotiate the terms of the Stipulation, which they executed on November 20, 2018. *Id.*; Ex. A (Stipulation).

II.     **SUMMARY OF SETTLEMENT TERMS**

    A.     **The Settlement Fund**

The Stipulation establishes a $500,000.00 settlement fund (the "Fund") to be allocated among Plaintiff and the 482 other individuals ("Collective Members") who opted into the Lawsuit. Ex. A (Stipulation) § IV.A.(1).

    B.     **Settlement Notice Procedure**

The Settlement Administrator will send a Court-approved notice ("Notice"), Ex. A

(Stipulation) at Ex. A, to each Collective Member by U.S. Mail within 21 days of the Court's approval of the settlement becoming a final non-appealable order. *Id.* § III.D.(1). The Notice will enclose each Collective Member's settlement check in the amount of her *pro rata* settlement share, less applicable taxes. *Id.* By endorsing her check, each Collective Member will release all federal and state overtime claims based on the facts pled in the Lawsuit that accrued during their employment as TLs including, without limitation, all state and federal claims for unpaid overtime wages and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses during the Relevant Period (the "Settled Claims"). *Id.* § V. Collective Members will not be required to return a claim form or take any other steps to receive their settlement awards.

The Notice will also contain the details of the release and advise each Collective Member of a website where he or she can review additional information about the settlement. *Id.* § III.D.(1).

Before issuing the Notice, the Settlement Administrator will make reasonable efforts to obtain current addresses for all Collective Members. *Id*. § III.D.(1). For any Notice returned as undeliverable, the Settlement Administrator will use commercially reasonable means to obtain a new address and re-mail the Notice by First Class U.S. Mail. *Id.* § III.D.(2).

Collective Members will have 180 days from the date of mailing to negotiate settlement checks. *Id.* § III.D.(3). The Settlement Administrator will mail two communications reminding Collective Members who have not cashed their settlement checks to do so, one 60 days and one 120 days after the initial mailing of the Notice. *Id.* § III.D.(4).

### C.     Allocation Formula

Each Collective Member's *pro rata* share of the Fund will be calculated based upon the

number of workweeks that he or she worked for Defendant as a TL during the Relevant Period as

follows:

> (1)     the Settlement Administrator will compute the total number of workweeks for each Collective Member during the Relevant Period;
>
> (2)     divide the total number of workweeks worked by each Collective Member during the Relevant Period by the total number of workweeks worked by all Collective Members during the Relevant Period; and
>
> (3)     multiply the fractional amount derived in (2) by the amount of the Fund to compute the Collective Member's share of the Fund.

*Id.* § IV.D.

### D.     Service Payments

In addition to their payment under the allocation formula, in recognition of the services

they rendered to the Collective, Plaintiff's Counsel negotiated Service Payments to Service

Payment Recipients as follows: (a) $10,000.00 for Named Plaintiff Slaughter; (b) $5,250.00 each

for Opt-in Plaintiffs Gates and Crawford; (c) $3,250.00 each for Opt-in Plaintiffs Meeks and

Powers; and (d) $1,500.00 each for Opt-in Plaintiffs Wright and Lagala (collectively "Service

Payments"). *Id.* § IV.C.(1).

### E.     Settlement Administration

The parties have selected Rust Consulting, Inc., a third-party claims administrator, to

serve as the Settlement Administrator.  Swartz Decl. ¶ 43.  Plaintiff's Counsel will pay the

Settlement Administrator's fees and expenses from their Court-awarded attorneys' fees and

expenses upon the Settlement Administrator's completion of all duties.  Ex. A (Stipulation) §

III.A.(3).

The Settlement Administrator will be responsible for, among other things, determining the amount of payments allocated to each Collective Member in accordance with the Stipulation; cutting and mailing checks; wiring Court-approved attorneys' fees and costs to Plaintiff's Counsel; printing and providing W-2s and 1099 forms as required under the Stipulation and applicable law; and reporting and remitting taxes to appropriate authorities. *Id.* § III.A.(1). The Settlement Administrator will also establish, control, and maintain the Qualified Settlement Fund ("QSF") and prepare tax returns for the QSF. *Id.* § II.A.(2).

### F.     Attorneys' Fees and Litigation Costs

In addition to the $500,000 paid to Collective Members and the $30,000 paid to the Service Payment Recipients, Defendants will pay Plaintiff's Counsel $670,000.00 in attorneys' fees and costs, including the costs of the Settlement Administrator. *Id.* § VI.B.(1).[7] The parties negotiated the fees and expenses separately and in addition to the Collective Members' settlement. Swartz Decl. ¶ 55. Defendant does not contest the amount Plaintiff's Counsel seeks in Fees and Expenses. Ex. A (Stipulation) § IV.B.(1).

### ARGUMENT

### I.     The Court Should Approve the Settlement.

In this district, courts typically approve a proposed FLSA settlement after the parties show that: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Thompson v. Qwest Corp.*, No. 17 Civ. 1745, 2018 WL 2183988, at *2 (D.

---

[7]     Detailed summaries of Plaintiff's Counsel's fees and costs reflecting the time and costs expended are attached as Exs. E (O&G Fee Summary) and F (O&G Costs Summary) to the Swartz Decl., Ex. A (Billing Records Summary) and B (Cost Summary) to the Declaration of Gregg I. Shavitz ("Shavitz Decl."), and Ex. A and B to the Declaration of Mary Jo Lowrey ("Lowrey Decl.").

Colo. May 11, 2018) (quoting *Baker v. Vail Resorts Mgmt. Co.*, No. 13 Civ. 01649, 2014 WL

700096, at *1 (D. Colo. Feb. 24, 2014)).[8]  This settlement meets all three of these requirements.[9]

A.      **The Lawsuit Involves a Bona Fide Dispute.**

The settlement resolves a bona fide dispute.  To establish a bona fide dispute, the parties

must present:

     (1)      a description of the nature of the dispute;
     (2)      a description of the employer's business and the type of work performed by
          the employees;
     (3)      the employer's reasons for disputing the employees' right to a minimum
          wage or overtime;
     (4)      the employees' justification for the disputed wages; and
     (5)      if the parties dispute the computation of wages owed, each party's estimate
          of the number of hours worked and the applicable wage.

*Baker*, 2014 WL 700096, at *1 (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714,

718 (E.D. La. 2008)).

Here, the parties dispute whether Sykes – which provides customer support services to

companies in the communications, financial services, healthcare, technology, transportation, and

retail sectors – inappropriately classified TLs as exempt employees not entitled to overtime

---

[8]      Although some courts in this district have held that court approval is not required for
FLSA settlements, Plaintiff believes best practices dictate seeking and obtaining approval.
Compare *Fails v. Pathway Leasing LLC*, No. 18 Civ. 0308, 2018 WL 6046428, at *4 (D. Colo.
Nov. 19, 2018) (denying as unnecessary motion for approval of opt-in FLSA collective action
settlement) *and* Opinion and Order Denying Motion to Approve Settlement, *Ruiz v. Act Fast
Delivery, of Colo., Inc.*, No. 14 Civ. 0870 (D. Colo. Jan. 9, 2017), ECF No. 132 (attached to the
Swartz Decl. as Ex. G) (holding that FLSA settlements do not require court approval), *with
Davis v. Crilly*, 292 F. Supp. 3d 1167, 1170 (D. Colo. 2018) (citing *Lynn's Food Stores, Inc. v.
United States,* 679 F.2d 1350, 1353 (11th Cir. 1982) ("[P]arties must present any proposed
[FLSA] settlement to the district court for review and a determination of whether the settlement
agreement is fair and reasonable."), *Solis v. Top Brass, Inc.*, No. 14 Civ. 00219, 2014 WL
4357486, at *1 (D. Colo. Sept. 3, 2014) ("Requiring court approval of FLSA settlements
effectuates the purpose of the statute."), *and Baker*, 2014 WL 700096, at *1 (same).
[9]      The reasonableness of Plaintiff's Counsel's attorneys' fees is addressed in Section IV,
*infra*.

premiums.  Plaintiff alleges that TLs' primary duty was performing routine, non-exempt work, including performing routine inspections of agents' calls to track quality-control metrics using standardized forms provided by Sykes; running routine reports regarding call data; and completing forms relating to computer-generated metrics.  *See* ECF No. 1 (Compl.) ¶¶ 5, 7-8.

Sykes disputes these claims, arguing that TLs managed large groups of customer agents, trained them, coached them, provided them with feedback, and otherwise performed exempt work.  *See* ECF No. 14 (Ans.) at ¶¶ 34-89; ECF No. 45 (Def.'s Resp. to Pl.'s Notice Mot.) at 1-7.

As for the computation of wages owed, the parties dispute whether Plaintiff and the Collective Members' unpaid overtime should be calculated at time-and-a-half their regular rates or according to the "fluctuating workweek" method.  Compare *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008) (in misclassification case, affirming district court holding that employees had requisite understanding for application of fluctuating workweek method to calculation of back pay), *with Burke v. Alta Colls., Inc.*, No. 11 Civ. 2990, 2014 WL 2882807, at *4 (D. Colo. June 25, 2014) (holding employer's argument that employees were exempt from FLSA's overtime requirement suggests lack of a mutual understanding that overtime would be paid at a half-time rate).

Sykes also likely would have disputed the number of hours Plaintiffs worked.  Swartz Decl. ¶ 52.  Plaintiffs would have tried to prove that the TLs regularly worked 10 or more hours of unpaid overtime per week, whereas Sykes would have argued that they worked little overtime or even none at all.  *Id.*  In light of these disputes, the total unpaid overtime damages for the Opt-in Plaintiffs could range from $168,671.67 (assuming they worked 1 hour of overtime per week and that they would receive only "half-time" premiums pursuant to the fluctuating workweek

method) to \$5,186,653.94 (assuming they worked 10 hours of overtime per week and that they would receive overtime premiums at time-and-a-half).  *Id.*

### B.     The Proposed Settlement Is Fair and Equitable to All Parties Concerned.

The proposed Settlement is fair and equitable to all parties.  "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales."  *Manohar v. Sugar Food LLC*, No. 16 Civ. 02454, 2017 WL 3173451, at *3 (D. Colo. July 26, 2017) (quoting *Baker*, 2014 WL 700096, at *2).

### 1.     The Proposed Settlement Provides Adequate Compensation to Collective Members.

The proposed Settlement provides Collective Members with adequate compensation for their claims, given the risks present.  To determine whether a proposed Settlement provides adequate compensation to Collective Members, courts in the Tenth Circuit regularly apply the same fairness factors as those applied to a proposed class action settlement under Federal Rule of Civil Procedure 23(e).  *See Whittington v. Taco Bell of Am., Inc.*, No. 10 Civ. 1884, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013) (collecting cases).  These factors include:

(1)     whether the proposed settlement was fairly and honestly negotiated,
(2)     whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt,
(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and
(4)     the judgment of the parties that the settlement is fair and reasonable.

*Id.*  The proposed Settlement satisfies all of these factors.

#### a.     The Proposed Settlement Was Fairly and Honestly Negotiated.
First, the Settlement was fairly and honestly negotiated.  To make this determination, courts examine "the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that might have marred the negotiations themselves."  *Shaw v.*

*Interthinx, Inc.*, No. 13 Civ. 1229, 2015 WL 1867861, at *2 (D. Colo. Apr. 22, 2015) (quoting

*Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).

### i.     Experienced Counsel Conducted the Settlement Negotiations.

Here, experienced counsel conducted the settlement negotiations.  Both parties were

represented by sophisticated counsel experienced in wage and hour employment litigation.

Courts have repeatedly found Plaintiff's Counsel to be adequate class counsel in wage and hour

class actions.  Swartz Decl. ¶ 12; Shavitz Decl. ¶ 12; Lowrey Decl. ¶ 6.  Littler Mendelson, P.C.,

the largest U.S.-based law firm exclusively devoted to representing management in employment

cases,[10] represented Sykes throughout the litigation and settlement negotiations.

### ii.     Plaintiff's Counsel Vigorously Prosecuted the Claims.

Plaintiff's Counsel vigorously prosecuted Plaintiff's claims in this Court for more than a

year before reaching a settlement.  Plaintiff's Counsel's efforts included briefing discovery

disputes regarding the scope of pre-notice discovery; filing Plaintiff's Notice Motion, ECF No.

35, which the Court granted on March 12, 2018, ECF No. 48; defending Opt-in depositions;

propounding written discovery on Defendant; responding to Defendant's written discovery on

Named Plaintiff and six Opt-in Plaintiffs; engaging in several meet and confers and seeking

Court intervention as needed, *see, e.g.*, ECF No. 86; and conducting numerous interviews of TLs

and other witnesses.

### iii.     There Was No Collusion Between the Parties.

The parties' negotiations were at arm's-length at all times.  *See* Swartz. Decl. ¶ 42.  In

addition, Hunter Hughes, a "highly experienced, talented, and independent mediator," assisted

---

[10]     *See History*, Littler Mendelson, https://www.littler.com/history (last visited December 20, 2018).

the parties with the negotiation. *Williams v. Mohawk Indus., Inc.*, No. 04 Civ. 0003, 2010 WL

11500061, at *7 (N.D. Ga. July 22, 2010). The use of a mediator weighs against a finding of

collusion. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a

"mediator's involvement in pre-certification settlement negotiations helps to ensure that the

proceedings were free of collusion and undue pressure"); *In re Molycorp, Inc. Sec. Litig.*, No. 12

Civ. 292, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) ("Utilization of an experienced

mediator during the settlement negotiations supports a finding that the settlement is reasonable,

was reached without collusion and should therefore be approved" and collecting cases); *Fulton v.*

*TLC Lawn Care, Inc.*, No. 10 Civ. 2645, 2012 WL 1788140, at *4 (D. Kan. May 17, 2012)

(finding no evidence of fraud or collusion where parties reached an FLSA settlement with the aid

of "an experienced labor-and-employment-law mediator"); *Hobbs v. Tandem Envtl. Solutions*,

No. 10 Civ. 1204, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012) (same). The negotiations also

stretched over a year and a half, which makes collusion unlikely.

> **b.** **Serious Questions of Law and Fact Exist Which Place the Ultimate Outcome of the Litigation In Doubt.**

This Lawsuit involves serious questions of law and fact with respect to Plaintiff's claims

and Sykes's defenses that place the ultimate outcome of the litigation in doubt. These questions

include whether the executive and/or administrative exemptions to the FLSA apply to TLs;

whether Sykes willfully misclassified TLs as exempt and/or whether it acted in good faith;

whether TLs' unpaid overtime premiums should be calculated pursuant to the fluctuating

workweek method; and whether the court should maintain the certified collective through trial.

Although Plaintiff believes his case is strong, it is subject to considerable risk, which is

inherent in litigation. "The presence of such doubt augurs in favor of settlement because

settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of

14

no recovery after long and expensive litigation." *In re Qwest Comms. Int'l, Inc. Sec. Litig.*, 625

F. Supp. 2d 1133, 1138 (D. Colo. 2009). Here, a trial on the merits would involve significant

risk as to both liability and damages. Plaintiff would have to overcome Defendant's defense that

TLs were subject to the administrative, executive, and/or combination exemptions to the FLSA.

ECF No. 14 (Def.'s Affirmative Defenses) at ¶¶ 16-18. Plaintiff would also have to prove

willfulness to obtain a third year of liability of damages. Plaintiff's Counsel are experienced and

realistic, and understand that the resolution of liability issues, the outcome of the trial, and the

inevitable appeals process are inherently uncertain in terms of outcome and duration. Swartz

Decl. ¶ 50. The proposed Settlement alleviates these uncertainties. *Id.*

> **c.** **The Value of An Immediate Recovery Outweighs the Mere Possibility of Future Relief after Protracted and Expensive Litigation.**

The value of Collective Members' immediate recovery outweighs the mere possibility of

future relief after protracted litigation. Although Plaintiff's Counsel believes that Plaintiff's

claims are meritorious, they recognize that litigation poses significant risks, including the

potential for decertification of the Collective. *Id.* Compared with the prospect of a long wait for

a final judgment and recovery that may not occur for several years, the settlement allows

Collective Members to recover now.

Even accounting for the tolling that Plaintiff's Counsel negotiated, by the time Collective

Members opted into the case in mid- to late-2018, many TLs had little time left in the statute of

limitations for which they could pursue an exemption claim because Sykes reclassified the

position in November 2016. *Id.* ¶ 53.

Even a "cash settlement amounting to only a fraction of the potential recovery does not

per se render the settlement inadequate or unfair. Rather the fairness and the adequacy of the

settlement should be assessed relative to risks of pursuing the litigation to judgment." *Shaw*, 2015 WL 1867861, at *3 (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. 09 Civ. 261, 2012 WL 5878390 at*6 (N.D. Cal. Nov. 21, 2012)).

The settlement provides Collective Members with approximately 65% of their likely recovery.[11]  Not only does the value and the certainty of this recovery make it a good result, but Plaintiff's Counsel's attorneys' fees, which were negotiated separately, will not reduce the amount of the Collective Members' recovery, Swartz Decl. ¶ 55, further supporting the conclusion that the proposed Settlement is fair and reasonable.

### d.  The Parties Believe That the Settlement Is Fair and Reasonable.

Finally, Plaintiff and his counsel believe that the proposed Settlement is a fair and reasonable resolution of the claims, especially in light of the relatively low salaries earned by TLs—around $26,000 annually.  *Id*. ¶ 54.  Defendant's signature on the Stipulation indicates that it and its counsel also believe the settlement is fair and reasonable.

### 2.  The Proposed Settlement Does Not Frustrate FLSA Policy Rationales.

The proposed settlement furthers the goals of the FLSA.  The FLSA was enacted primarily to "aid the unprotected, unorganized and lowest paid . . . employees who lack[] sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945); *see also Baker*, 2014 WL 700096, at *2

---

[11]     This assumes that (1) Collective Members could prove they consistently worked five hours of overtime per week; (2) that Plaintiff successfully argues that Sykes acted willfully and that a three-year statute of limitations should apply; and (3) that the Court would apply the fluctuating workweek method of calculating damages, consistent with Tenth Circuit precedent. Swartz Decl. ¶ 51; *see also Serco*, 530 F.3d at 1231 (finding fluctuating workweek the appropriate measure of damages in FLSA misclassification case).

(FLSA's purpose "is to protect employees' rights from employers who generally wield superior bargaining power").

Here, 482 similarly situated TLs including Named Plaintiff Slaughter, who earned an average annual salary of approximately $26,000.00, will receive valuable consideration for releasing their claims, which are too small to prosecute individually. *See* Swartz Decl. ¶ 54; *see also* Ex. A (Stipulation) § IV.A.(1). Many TLs would be unlikely to obtain relief without a collective action lawsuit.

Moreover, Defendant reclassified the TL position to non-exempt in or around November 2016, Swartz Decl. ¶ 53, making it unlikely that misclassification of TLs will recur.

Additionally, the Stipulation does not contain a confidentiality provision, *see* Ex. A (Stipulation), and the Stipulation will be filed publicly on the Court's electronic docket, which ensures that the terms of the proposed Settlement are public and provides notice to any future plaintiffs of prior allegations of Defendant's improper conduct. *See Blocklin*, 2014 WL 6819894, at *3 (finding settlement agreement is fair and equitable and does not undermine the purpose of the FLSA where agreement is publicly available); *cf. Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242-43 (M.D. Fla. 2010) ("A confidentiality provision in an FLSA settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights.").

## II.   The Service Payments Are Reasonable.

In addition to the Fund, Defendant has agreed to pay service payments totaling $30,000 to the Service Payment Recipients. Specifically, Sykes will pay: (a) $10,000.00 for Named Plaintiff David Slaughter; (b) $5,250.00 each for Opt-in Plaintiffs Robert Gates and Melissa Crawford; (c) $3,250.00 each for Opt-in Plaintiffs Janice Meeks and Mary Powers; and (d)

$1,500.00 each for Opt-in Plaintiffs Kristie Melissa Wright and Nicole Lagala.  Ex. A

(Stipulation) § IV.C.(1).  Plaintiff respectfully requests that the Court approve these Service

Payments to recognize the work that he and certain Opt-in Plaintiffs preformed to advance the

litigation and benefit the Collective.  *See* Swartz Decl. ¶¶ 44-48.

"[I]ncentive awards are an efficient and productive way to encourage members of a class

to become class representatives, and to reward the efforts they make on behalf of the class."

*Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09 Civ. 1543, 2010 WL 5387559, at *8

(D. Colo. Dec. 22, 2010).  When reviewing incentive awards, courts consider "(1) the actions

that the class representative took to protect the interests of the class; (2) the degree to which the

class has benefited from those actions; and (3) the amount of time and effort the class

representative expended in pursuing the litigation."  *Id.* at *6 (citing *Cook v. Niedert*, 142 F.3d

1004, 1016 (7th Cir. 1998)).

Here, the requested Service Payments meet all of these criteria.  First, the Service

Payment Recipients made significant efforts to protect the interests of the Collective.  Named

Plaintiff Slaughter and Opt-in Plaintiffs Meeks and Powers litigated this case in two separate fora

for nearly two years.  Swartz Decl. ¶ 45.  The Service Payment Recipients assisted Plaintiff's

Counsel in investigating the claims, produced documents to support the claims, helped prepare

Plaintiff's Counsel for mediation, and provided testimony that helped Plaintiff's Counsel achieve

this result.  *Id*. ¶ 46.  All of the Service Payment Recipients submitted detailed declarations in

support of Plaintiff's Notice Motion, which the Court granted.  *See* ECF No. 35.  All Service

Payment Recipients also cooperated in discovery by timely responding to Defendant's written

discovery, and Opt-in Plaintiffs Gates and Crawford submitted to depositions.  Swartz Decl. ¶

47.  The Service Payment Recipients also conferred with Plaintiff's Counsel about the Lawsuit and assisted with the resolution of the case.  *Id.* ¶ 48.

Second, Collective Members have benefited from the Service Payment Recipients' efforts.  Named Plaintiff Slaughter initiated this action to vindicate the rights of TLs who he alleged Sykes had misclassified and failed to pay proper overtime wages.  ECF No. 1 (Complaint) ¶ 12.  The Service Payment Recipients provided Plaintiff's Counsel with important information about TLs' claims, which informed Plaintiff's Counsel's investigation, litigation, mediation, and settlement of the case.  Swartz Decl. ¶¶ 46, 48.  The Service Payment Recipients' active participation in the case benefited Collective Members who now stand to gain valuable monetary awards to resolve their claims.

Third, the Service Payment Recipients expended significant time and effort in pursuing the Lawsuit.  They dedicated many hours to this dispute, including by submitting detailed declarations in support of Plaintiff's Notice Motion and actively participating in discovery.  *Id.* ¶ 47.  All Service Payment Recipients responded to written discovery and Opt-in Plaintiffs Gates and Crawford submitted to depositions.  *Id.*

The Service Payments are within the range of incentive awards approved by courts in the Tenth Circuit.  *See, e.g.*, *Thompson*, 2018 WL 2183988, at *3 ("[R]easonable incentive payments have become common for class representatives, and . . . for FLSA named plaintiffs as well" and approving a $5,000 incentive award to the named plaintiff who "attached his name to [the] federal lawsuit, making the public and his future employers aware that he filed suit against his former employer" (citations and internal quotation marks omitted)); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (approving $7,500 service payment and collecting cases); *Shaw*, 2015 WL 1867861, at *8-9 (approving incentive awards of $10,000 to

each named plaintiff and $2,500 to each deposed opt-in plaintiff); *Lucken Family Ltd. P'ship*, 2010 WL 5387559, at *6 (approving $10,000 incentive award).

## III.     The Court Should Approve Plaintiff's Requested Attorneys' Fees and Expenses.

In addition to the Fund and the Service Payments, Defendants have agreed to pay fees and expenses of $670,000 ("Fees and Expenses").  Ex. A (Stipulation) § IV.B.(1).  Plaintiff's Counsel will pay the Settlement Administrator approximately $17,000 from this amount.  Swartz Decl. ¶ 55.

The parties negotiated the Fees and Expenses separately from, and after, they negotiated the Collective Members' settlement amount.  *Id.*  This weighs in favor of approval because the amount of the Collective Members' recovery was not reduced to account for Plaintiff's fees, and Plaintiff's Counsel's loyalty to their clients was not undermined by a simultaneous negotiation. *See, e.g., Chavez v. Excel Servs. Se., Inc., No. 13 Civ. 3299, 2015 WL 4512276,* at *4 (D. Colo. July 27, 2015) (approving attorneys' fees where the parties represented that plaintiff-employees' recovery was negotiated separately from attorney fee award and reasonableness of that recovery was not influenced by the attorney fee award).[12]

The situation here is unlike that of a common fund settlement, where the attorneys' fees decrease the class recovery and the court must ensure that class members' interests are

---

[12]     *See also Cannon v. Time Warner NY Cable LLC*, No. 13 Civ. 2521, 2015 WL 4498808, at *4 (D. Colo. July 24, 2015) (approving settlement and awarding attorneys' fees where parties represented that class counsel fees and costs were separately negotiated and without regard to the amount paid to the members of the settlement group); *Blocklin v. Black Pepper Pho, LLC*, No. 14 Civ. 1252, 2014 WL 6819894, at *3 (D. Colo. Dec. 3, 2014) (finding settlement was fairly negotiated where settlement addressed plaintiffs' recovery separately from and independently of attorney fee considerations); *Dees*, 706 F. Supp. 2d at *1243 ("[I]f the parties submit a proposed FLSA settlement that . . . represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

protected.  *See, e.g.*, *Tennille v. W. Union Co.*, No. 09 Civ. 00938, 2013 WL 6920449, at *11 (D.

Colo. Dec. 31, 2013) (awarding 35% of the common fund to class counsel for attorneys' fees).

Although attorneys' fees in an FLSA settlement must always be reasonable, *Baker*, 2014 WL

700096, at *3, the circumstances here – where the fees were negotiated separately from the

payment to the collective – decrease the risk that the class will be shortchanged.  In any event, if

the court cuts the fees that Plaintiff's Counsel negotiated, the Opt-in Plaintiffs will not receive

any more than the $500,000 negotiated amount, and Sykes will pay less.

Moreover, a fee request need not be in any particular proportion to an FLSA recovery.

Courts are well within their discretion to award fees that exceed a damages award.  *Garcia v.*

*Tyson Foods, Inc.*, 770 F.3d 1300, 1311 (10th Cir. 2014).  Here, Plaintiff's Counsel achieved

excellent results for the Collective Members and should be awarded a significant portion of the

amount they expended to do so.

To determine whether a fee request is reasonable, courts compare it to the lodestar

amount, "which represents the number of hours reasonably expended multiplied by a reasonable

hourly rate." *Baker*, 2014 WL 700096, at *3 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433

(1983)).  "The lodestar amount may be adjusted upon several factors, including the amount in

controversy, the length of time required to represent the client effectively, the complexity of the

case, the value of the legal services to the client, awards in similar cases, or other factors."

*Manohar*, 2017 WL 3173451, at *5 (citing *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143,

147 (Colo. App. 1996)).

Here, all of these factors weigh in favor of approving the Fees and Expenses.  Plaintiff's

Counsel's lodestar amount calculated using rates typical for attorneys in Colorado is currently

$637,420.50.  Swartz Decl. ¶ 72.  Plaintiff's Counsel's lodestar amount calculated using their

actual hourly rates is currently $891,597.50.  *Id.*  In addition, Plaintiff's Counsel have incurred

$40,884.37 in out of pocket expenses directly related to prosecuting this case, which will be

reimbursed from the $670,000 Fees and Expenses payment.  *Id.* ¶ 74; Shavitz Decl. ¶ 24; Lowrey

Decl. ¶ 15.  In total, and applying their actual hourly rates, Plaintiff's Counsel have expended

33% more than their fee request.  Swartz Decl. ¶ 72.

> ### A.     Plaintiff's Counsel Expended a Reasonable Number of Hours.

As of December 19, 2018, Plaintiff's Counsel have expended 1,972.6 hours of attorney,

paralegal, and staff member time on this Lawsuit.[13]  This is a reasonable amount of time

considering the lengthy litigation and negotiations that led to the settlement.  To determine

whether the hours expended are reasonable, courts review the attorneys' billing entries "to ensure

that counsel exercised proper billing judgment."  *Castorena v. El Trompito, Inc.*, No. 14 Civ.

326, 2014 WL 5564339, at *3 (D. Colo. Nov. 3, 2014) (Mix, J.) (citing *Case v. Unified Sch. Dist.

No. 233, Johnson Cnty. Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998)).  "Billing judgment consists

of winnowing the hours actually expended down to the hours reasonably expended."  *Case*, 157

F.3d at 1250.  Factors to consider in determining a reasonable amount of time to perform a task

include: "(1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the

responses necessitated by the maneuvering of the other side; and (4) the potential duplication of

services caused by the presence of multiple attorneys when one would suffice."  *Id.* (citations

and internal quotation marks omitted).  Here, Plaintiff's Counsel used proper billing judgment

when performing all tasks.

---

[13]     Plaintiff's Counsel's hours were compiled from contemporaneous time records
maintained by each attorney, paralegal, and support staff participating in the case.  Swartz Decl.
¶ 56; Shavitz Decl. ¶ 17; Lowrey Decl. ¶ 11.

1.      **This Complex Case Required Significant Time.**

Class and collective actions, especially in the context of wage and hour claims, are

inherently complex.  *See, e.g., Shaw*, 2015 WL 1867861, at *6 ("[W]age and hour issues . . . are

governed by highly technical state and federal wage statutes and regulations" and are complex

case[s]); *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *4 (S.D. Ohio

June 24, 2011) (stating that wage and hour collective actions are "frequently complex matters");

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479 (S.D.N.Y. 2013) (quoting *Barrentine v.*

*Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)) ("FLSA claims typically involve

complex mixed questions of fact and law.").

2.      **Plaintiff's Counsel Pursued Several Strategies to Secure the Best**
**Outcome for Collective Members.**

Plaintiff's Counsel pursued multiple strategies to ensure recovery for Collective

Members.  Specifically, before filing the Lawsuit, O&G and SLG thoroughly investigated the

claims by interviewing witnesses and reviewing relevant documents provided by TLs.  Swartz

Decl. ¶ 26.  After completing their initial investigation, Plaintiff's Counsel contacted Sykes to

invite it to explore a pre-suit resolution.  *See id.* ¶ 29.  Plaintiff's Counsel convinced Sykes to toll

potential Collective Members' claims and attend a mediation in the hopes of securing an early

resolution.  *Id.* ¶¶ 29, 32.  Although the mediation was unsuccessful, it provided Plaintiff's

Counsel with valuable information about the parties' assessment of the strengths of the claims

and the extent of Defendant's exposure.  *Id.* ¶ 38.  Throughout the litigation, Plaintiff's Counsel

continued to negotiate with Defendant, ultimately reaching agreement on the material terms

shortly after the opt-in period concluded.  *Id.* ¶ 40.

After the litigation commenced, Plaintiff's Counsel acted to preserve TLs' claims by

filing their successful Notice Motion, which ensured that TLs received timely information about

the case and an opportunity to preserve their claims by opting in.  ECF No. 35.  In addition,

Plaintiff's Counsel expended time and resources to ensure that as many Collective Members as

possible joined the lawsuit.  These efforts included moving to extend the notice period and to

send notice by additional means.  *See supra* § I.B.  Plaintiff's Counsel also prepared for and

defended two depositions of Opt-in Plaintiffs Crawford and Gates, responded to Defendant's

written discovery, and propounded written discovery on Defendant.  Swartz Decl. ¶ 23.

### 3. Defendant's Conduct Contributed to the Hours Expended by Plaintiff's Counsel.

Defendant's litigation positions required Plaintiff's Counsel to expend additional time on

the litigation.  Sykes opposed Plaintiff's routine request to send notice to potential collective

members.  This caused Plaintiff's Counsel to expend resources on this contested motion.  Sykes

sought to depose Plaintiff and the opt-in plaintiffs prior to responding to the Notice motion.  ECF

Nos. 36, 37.  Plaintiff's Counsel successfully opposed this request, limiting Sykes to obtaining

written discovery responses.  ECF No. 42 (Tr. of Rule 16(b) Scheduling Conference) 9:14-20,

10:1-14.  This allowed the Notice Motion to be decided quickly and gave Collective Members

the ability to timely protect their rights.  In addition, Plaintiff's Counsel represented Collective

Members' interests by engaging in lengthy negotiations about the nature and extent of opt-in

discovery, resisting Defendant's aggressive discovery requests.  Swartz Decl. ¶ 22.

### 4. Plaintiff's Counsel Avoided Duplication of Services.

Throughout the litigation, Plaintiff's Counsel made good faith efforts to minimize hours

that are excessive, redundant, or unnecessary, *see Hensley*, 461 U.S. at 434, and made every

effort to delegate tasks to the lowest billing professional who could perform the task effectively

whenever possible.  *See* Swartz Decl. ¶ 64; Shavitz Decl. ¶ 16; Lowrey Decl. ¶ 12.  Plaintiff's

Counsel also made efforts to staff the case leanly.  Swartz Decl. ¶ 65.  For example, only one

attorney from Plaintiff's Counsel's team was present for each of the opt-in depositions taken by Defendant. *Id*.

### 5. Plaintiff's Counsel Will Spend Additional Time on the Litigation After the Court Approves the Settlement.

If the Court approves the settlement, Plaintiff's Counsel will spend considerable additional time administering and enforcing the settlement. *Id.* ¶ 66. Courts should consider such uncompensated future work when assessing the reasonableness of the time spent. *See, e.g.*, *Hall v. ProSource Techs., LLC*, No. 14 Civ. 2502, 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) ("In determining a reasonable attorneys' fee award, courts are mindful of the fact that the lodestar multiplier will diminish when counsel is required to perform additional work in administering a finalized settlement."). Specifically, Plaintiff's Counsel will respond to Collective Members' inquiries, monitor and answer questions from the Settlement Administrator, and engage with Defendant if there are any disputes about administering the settlement and distributing the Fund. Swartz Decl. ¶ 66. All of this work will be for the benefit of the Collective Members and should inform the Court's analysis.

### B. Plaintiff's Counsel's Rates Are Reasonable By Any Measure.

### 1. Plaintiff's Counsel's Requested Fee Is Reasonable When Calculated at District of Colorado Rates.

Applying rates comparable to those typically awarded by courts in this district, Plaintiff's Counsel's requested fee is reasonable. Recent decisions have awarded attorneys in employment and comparable civil rights cases rates ranging from $375.00-$500.00 for partners and $350.00-$375.00 for associates. For example, in *Stroup v. United Airlines*, No. 15 Civ. 01389 (D. Colo.), an Age Discrimination in Employment Act case, Judge Daniel awarded a senior partner $590.00 per hour and $375.00 and $350.00 per hour to associates with five and two years of experience,

respectively.  Ex. H (Order dated Dec. 5, 2018).  In *McFadden v. Town of Meeker Colorado*, No.

16 Civ. 2304 (D. Colo.), a Fair Housing Act disability discrimination case, Judge Gallagher

awarded rates of $375-$500 per hour to partners and $325.00 per hour to another attorney.  Ex. I

(Order dated May 15, 2018); *see also Aragon v. Clear Water Prod. LLC*, No. 15 Civ. 02821,

2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018) (in common fund settlement of wage and hour

case, performing lodestar cross-check and noting that "The hourly rate charged by class counsel

of $600 per hour is also generally consistent with the rates charged in other cases in this

district.").

    The hourly rates in the chart below, which are consistent with these cases and others,

result in a lodestar of $637,420.50.

| Position | Rate |
|---|---|
| Senior Partner | $600 |
| Junior Partner | $400 |
| Counsel | $375 |
| Senior Associate | $350 |
| Junior Associate | $250 |
| Staff Attorney | $200 |
| Paralegal | $150 |

    This adjusted lodestar figure is approximately the same as the fee that Plaintiff's Counsel

negotiated, after deducting litigation costs and the cost of the Settlement Administrator.  This is

particularly true in light of the additional work that will be performed by Plaintiff's Counsel

following Court approval of the Settlement.  *See supra* Section IV.A.5.

### 2.      Plaintiff's Counsel Requested Fee is Reasonable When Calculated At Their Actual Hourly Rates.

    The actual hourly rates Plaintiff's Counsel use to calculate their true lodestar amount are

reasonable.  Although courts typically look to "the prevailing market rate in the relevant

community[,]" *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996), the Court has

discretion to depart from that precedent. *See Okla. Intrastate Transmission, LLC v. 25 Foot Wide Easement*, 908 F.3d 1241, 1247 (10th Cir. 2018) (affirming district court's award of attorneys' fees based on counsel's home location rates and not rates in local community). Out-of-district rates are appropriate where the "litigation is unique and requires expertise not readily available in the [local] market." *Large v. Fremont Cty., Wyo.*, No. 05 Civ. 0270, 2013 WL 12342417, at *5 (D. Wyo. Sept. 20, 2013). In evaluating Plaintiff's Counsel's requested rates, the Court may also consider whether

> (1) the case required a specialized expertise not found in the local market; (2) the case required or could have required significant financial resources; (3) the case raised unpopular issues; and (4) it was reasonable for the clients to look to out-of-town counsel because attorneys in the community have not filed, and have shown no interest in filing, such litigation.

*Kersch v. Bd. of Cty. Comm'rs of Natrona Cty., Wyo.*, 851 F. Supp. 1541, 1544 (D. Wyo. 1994). Several of these factors are present here.

**a.      Plaintiff's Counsel Provided Specialized Expertise Not Found in the Denver Metro Area.**

The successful prosecution of this case required counsel with expertise in large-scale nationwide collective actions. Plaintiff's Counsel are experienced and nationally recognized for their expertise in litigating complex class and collective actions, including wage and hour cases like this one. Swartz Decl. ¶¶ 8, 12; Shavitz Decl. ¶ 12; Lowrey Decl. ¶ 6. O&G, who served as lead counsel for Plaintiff, is a 70-lawyer firm with a nationwide class and collective action practice. Swartz Decl. ¶ 1. O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law." *Beckman*, 293 F.R.D. at 473 (internal quotation omitted).[14]

_____

[14]      *See also* Ex. J (Order dated May 6, 2016, *Blum v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (S.D.N.Y), at 2-3) (O&G and SLG are "experienced class action employment lawyers with

Likewise, SLG has acted as lead counsel or co-counsel on dozens of national wage and hour class and collective actions, including *Blum*, *supra*; Shavitz Decl. ¶ 12; *see also id*. at Ex. C (*Magee, et al. v. Francesca's Holdings Corp., et al.*, No. 17 Civ. 00565 (D.N.J. Nov. 6, 2018), ECF No. 85) (SLG representing conditionally certified class under the FLSA); *id*. at Ex. D (*Robbins v. Abercrombie & Fitch Co*., No. 15 Civ. 06187 (W.D.N.Y. Sept. 6, 2016), ECF No. 46) (finding SLG to have "fully and adequately represented the Settlement Class"); *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 1265909, at *5 (S.D.N.Y. June 20, 2014) (appointing SLG and O&G as class counsel); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *3 (S.D.N.Y. Oct. 2, 2013) (finding SLG and O&G experienced and adequate to serve as class counsel); *Beckman*, 293 F.R.D. at 473, 477 (stating SLG and O&G meet all the requirements to be appointed class counsel).

Finally, Lowrey Parady has also been recognized for its extensive experience prosecuting wage and hour actions. *See* Lowrey Decl. ¶ 7; *see also id.* at Ex. C to the Lowrey Decl. (Hr'g Tr. Nov. 29, 2017, *Solis v. Circle Grp., LLC*, No. 16 Civ. 01329 (D. Colo.), ECF No. 162)

---

good reputations among the employment law bar"); Ex. K (Hr'g Tr. 10-11, July 30, 2015, *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655 (E.D.N.Y. Jul. 30, 2015) ("*Puglisi* Tr.")) at 12) (commenting that lawyering by the plaintiffs' counsel—including O&G and SLG—was "excellent" and noting "the high level of service that was provided to the class"); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&C class counsel and noting that O&G attorneys have "the requisite experience in handling class actions …, are well versed in the applicable law, and have the resources necessary to represent the [class] fairly and adequately"); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248 (S.D.N.Y. 2014) (appointing O&G, among others class counsel and noting that the attorneys "bring to the case a wealth of class action litigation experience, much of which relates to claims of employment . . . ."); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

commending the work of plaintiffs' counsel team).[15]

Although there are firms in the Denver area that litigate wage and hour cases, they do so primarily against smaller, locally-based businesses.  Lowrey Decl. ¶ 9.  This Lawsuit required counsel experienced in nationwide collective actions with hundreds of opt-in plaintiffs. Plaintiff's Counsel filled that need.

### b.    This Case Required Considerable Financial Resources.

Obtaining the settlement required considerable financial resources, and additional resources would have been necessary had the parties not reached settlement relatively early.  As noted above, plaintiffs' firms in the Denver area are generally smaller and unlikely to have the resources to litigate a 500-member collective to judgment.  Opt-in discovery, with potentially dozens of depositions scheduled around the country, can be cost-prohibitive for many smaller firms.  Plaintiff's Counsel's proven ability to successfully prosecute wage and hour cases requiring considerable resources was a driving factor in the settlement.  Swartz Decl. ¶ 49; *see also Strauch v. Computer Scis. Corp.*, No. 14 Civ. 956, 2018 WL 5870337 (D. Conn. Nov. 9, 2018) (plaintiffs' verdict on wage and hour case litigated by O&G involving approximately 1,000 class and collective members); *Zorrilla v. Carlson Rests., Inc.*, No. 14 Civ. 2740, 2018 WL 1737139, at *2 (S.D.N.Y. Apr. 9, 2018) (approving settlement on behalf of 4,571 class and collective members who O&G represented over three years of litigation); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 160, 2017 WL 1968383, at *2 (S.D.N.Y. May 5, 2017) (approving settlement in case that O&G litigated for over six years).  Moreover, because Plaintiff's Counsel prosecuted the claims on a contingency basis, Plaintiff's Counsel absorbed all costs of the litigation with no

---

[15]     Although Lowrey Parady is based in Denver, it served as local counsel only on this matter.

assurance that those expenditures would be repaid.  Swartz Decl. ¶ 61.

### c.       Local Attorneys Rarely Pursue Cases of This Scale.

Although there are several plaintiff-side employment firms in the Denver metro area,

few, if any, have prosecuted nationwide class or collective actions without assistance from

counsel based outside the area.  Lowrey Decl. ¶ 9.  *See, e.g.*, *Shaw*, 2015 WL 1867861

(nationwide collective action and three-state class action brought by California and Colorado-

based attorneys from four separate law firms); *Beltran v. Interexchange*, No. 14 Civ. 3074 (D.

Colo.) (nationwide class and collective action brought by Denver-based non-profit organization

and Boies Schiller Flexner LLP).  It was therefore reasonable for Plaintiff to seek counsel with

the track record, expertise, and resources of prosecuting nationwide collective actions.

Given Plaintiff's Counsel's experience and the quality of their representation, their

requested rates are reasonable and should be approved.  *Okla. Intrastate Transmission*, 908 F.3d

at 1247 (affirming award of out-of-district rates where counsel had particular expertise and

where plaintiffs could not find local counsel to represent them); *Large*, 2013 WL 12342417, at

*5 (departure from local rates warranted where no evidence that any local attorney "was willing

to carry the laboring oar on this expensive, time consuming and long-lived litigation on a pro

bono basis").

### C.       The Results and Benefits Conferred Upon Collective Members Justify the Fee Requested.

Plaintiff's Counsel obtained an excellent result for the Collective Members.  The

settlement will provide Collective Members with a significant cash payment.  The Stipulation

provides that Defendant will pay $500,000.00 to settle Collective Members' claims.  Ex. A

(Stipulation) § IV.A..  The average (pre-tax) payment to Collective Members will be over

$1,000, which is an excellent result in light of the TLs' relatively low salaries – typically around

$26,000 per year.  Swartz Decl. ¶ 54; *see also* ECF No. 35 (Notice Motion) at Exs. A (Slaughter

Decl.) ¶ 10, B (Powers Decl.) ¶ 10, C (Gates Decl.) ¶ 10, D (Meeks Decl.) ¶ 10, J (Crawford

Decl.) ¶ 11.

      **D.**     **Plaintiff's Counsel's Expenses Are Reasonable.**

      The $670,000 Fees and Expenses payment includes Plaintiff's Counsel's litigation costs.

Plaintiff's Counsel's actual expenses of $40,884.37 were incidental and necessary to the

representation of the Collective.  Swartz Decl. ¶ 74.  These expenses include court fees,

deposition costs, postage fees, transportation, travel expenses, working meals, photocopies,

electronic research, and Plaintiff's share of the mediator's fees.  *Id.* at Ex. F (O&G Cost

Summary); Shavitz Decl. at Ex. B (SLG Cost Summary); Lowrey Decl. at Ex. B (Lowrey Cost

Summary).  These costs are of the type typically approved by courts in this Circuit.  *See* 29

U.S.C. § 216(b); *see also Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12 Civ. 2311, 2015 WL

4920292, at *7 (D. Kan. Aug. 18, 2015) (awarding plaintiffs costs for, *inter alia*, depositions,

travel, and mediation); *Stransky v. Healthone of Denver, Inc.*, No. 11 Civ. 02888, 2013 WL

5951493, at *4 (D. Colo. Nov. 7, 2013) (awarding plaintiffs' costs for copying, printing, and

legal research); *Wright v. U–Let–Us Skycap Servs., Inc.*, 648 F. Supp. 1216, 1219, 1226 (D.

Colo. 1986) (awarding plaintiffs' costs for, among other things, copying, depositions, and

postage).

## CONCLUSION

      For the reasons set forth above, Plaintiff respectfully requests that the Court issue an

order: (1) approving the $500,000 settlement as fair, adequate, and reasonable, as set forth in the

Joint Stipulation of Settlement; (2) approving the proposed Notice and directing its distribution;

(3) approving Service Payments to Service Payment Recipients; (4) approving Plaintiff's request

for $670,000.00 in Fees and Expenses to include Plaintiff's Counsel's attorneys' fees, costs, and

the Settlement Administrator's costs of $17,000.00; (5) incorporating the terms of the

Stipulation; and (7) dismissing the claims asserted by Named Plaintiff Slaughter in the Collective

and Class Action Complaint and Jury Demand with prejudice.

Dated: December 21, 2018
      Denver, Colorado

                                    Respectfully submitted,

                                    By:

*/s/ Justin M. Swartz*
**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Juno Turner
Melissa Lardo Stewart
Cheryl-Lyn Bentley
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
jms@outtengolden.com
jturner@outtengolden.com
mstewart@outtengolden.com
cbentley@outtengolden.com

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz
Paolo Meireles
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
gshavitz@shavitzlaw.com
pmeireles@shavitzlaw.com

**LOWREY PARADY, LLC**
Mary Jo Lowrey
Sarah J. Parady
1725 N. High Street, Suite 1
Denver, Colorado 80218
Telephone: (303) 593-2595

Facsimile: (303) 502-9119
maryjo@lowrey-parady.com
sarah@lowrey-parady.com

***Attorneys for Plaintiff and the Collective Members***

## CERTIFICATE OF SERVICE

I hereby certify that on this 21ˢᵗ day of December 2018, a true and correct copy of the foregoing Memorandum of Law in Support of Plaintiff's Unopposed Motion for Approval of Collective Action Settlement, Service Payments, and Attorneys' Fees and Costs, the Declaration of Justin M. Swartz In Support of Plaintiff's Unopposed Motion for Approval of Collective Action Settlement, Service Payments, and Attorneys' Fees and Costs, the Declaration of Gregg Shavitz In Support of Plaintiff's Unopposed Motion for Approval of Collective Action Settlement, Service Payments, and Attorneys' Fees and Costs, and the Declaration of Mary Jo Lowrey In Support of Plaintiff's Unopposed Motion for Approval of Collective Action Settlement, Service Payments, and Attorneys' Fees and Costs and attached exhibits were filed and served via CM/ECF on each of the following:

Jennifer S. Harpole
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
jharpole@littler.com

Claire B. Deason
Niloy Ray
Littler Mendelson, P.C. 1300 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2136
cdeason@littler.com
nray@littler.com

*Attorneys for Defendants*

/s/ Justin Swartz
Justin Swartz
