IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02038-KLM

DAVID SLAUGHTER, on behalf of himself and all others similarly situated,

   Plaintiff,

v.

SYKES ENTERPRISES, INC., doing business as Sykes Home Powered by Alpine Access,

   Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Unopposed Motion for Approval of Collective Action Settlement, Service Payments, and Attorneys' Fees and Costs** [#109][1] (the "Motion"). Plaintiff requests that the Court approve the executed Settlement Agreement [#110-1], which resolves all of Plaintiff's and Collective Members' claims in this matter pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

In the context of a private lawsuit brought by an employee against an employer under section § 216(b) of the FLSA, the prevailing opinion prior to January 2017 in the District of Colorado has been that an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.

---

[1] "[#109]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout this Order.

-1-

1982). In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit stated:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food*, 679 F.2d at 1354.

However, on January 9, 2017, the court issued an order in *Ruiz v. Act Fast Delivery of Colorado, Inc.*, No. 14-cv-00870-MSK-NYW, ECF No. 132 (D. Colo. Jan. 9, 2017) (unpublished), ultimately holding after a thorough discussion that "absent special circumstances, FLSA settlements do not require court approval." Since that time, courts in this District have approached court approval of FLSA settlements in a variety of ways.

In *Prim v. Ensign United States Drilling, Inc.*, No. 15-cv-02156-PAB-KMT, 2017 WL 3641844 (D. Colo. Aug. 24, 2017), *Davis v. Crilly*, 292 F. Supp. 3d 1167 (D. Colo. 2018), and *Ostrander v. Customer Engineering Services, LLC*, No. 15-cv-01476-PAB-MEH, 2018 WL 1152265 (D. Colo. Mar. 5, 2018), the court adjudicated motions to approve FLSA settlements pursuant to *Lynn's Food* without acknowledging *Ruiz* or other opinions calling into question the mandatory application of *Lynn's Food*.

In *Manohar v. Sugar Food LLC*, No. 16-cv-02454-NYW, 2017 WL 3173451, at *2 (D. Colo. July 26, 2017), and *Teague v. Acxiom Corporation*, No. 18-cv-01743-NYW, 2018 WL 3772865, at *1 (D. Colo. Aug. 9, 2018), the court acknowledged *Ruiz*, stating: "Upon

consideration of a motion to approve a settlement in an FLSA matter, the *Ruiz* court found that, with few exceptions, such settlements do not require court approval. Because the issue is not yet settled by the United States Court of Appeals for the Tenth Circuit . . . , this court proceeds with applying the standard utilized by courts in this District to consider whether it can approve the settlement." *Teague*, 2018 WL 3772865, at *1. The court there further stated:

> The court notes that the *Ruiz* court does not stand alone on this issue. Courts outside of this District have similarly questioned whether judicial approval of FLSA settlements is required or even appropriate, observing that parties may, with certain exceptions, manage the resolution of their cases independent of judicial intervention under application of Rule 41 of the Federal Rules of Civil Procedure. *See Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 375 (E.D.N.Y. 2013); *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 618-31 (W.D. Tex. 2005). Recently, in *Cheeks v. Freeport Pancake House, Inc.*, the Second Circuit addressed the issue in a matter of first impression and held that parties cannot enter into private settlements of FLSA claims without either the approval of the district court or the Department of Labor. 796 F.3d 199 (2d Cir. 2015) (determining that the FLSA is an "applicable federal statute" within the meaning of Rule 41, and thus an exception to the operation of Rule 41). In reaching its decision, the *Cheeks* court considered the potential for abuse in FLSA settlements against the FLSA's underlying purpose "to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work," and the Supreme Court's consistent efforts to "interpret[ ] the Act liberally and afford[ ] its protections exceptionally broad coverage." *Id.* at 206 (citations omitted). To this court's knowledge, the Tenth Circuit has not yet entered the debate or otherwise provided guidance as to whether the FLSA falls within the federal statute exception to Rule 41.

*Id.* at *1 n.1.

In *Thompson v. Qwest Corporation*, No. 17-cv-01745-WJM-KMT, 2018 WL 2183988, at *1-2 (D. Colo. May 11, 2018), the court acknowledged that requiring court approval of FLSA settlements under all circumstances had become unsettled law but ultimately decided to assume it must approve the settlement:

The Court understands that certain recent decisions, including from this District, have held that FLSA settlements do not require judicial approval. *See Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608 (W.D. Tex. 2005); *see also Ruiz et al. v. Act Fast Delivery of Colorado, Inc., et al.*, Case No. 14-cv-870-MSK-NYW, ECF No. 132 (D. Colo., Jan. 9, 2017). These decisions generally question the correctness of the holding in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), that the FLSA prohibits private compromise of wage claims. *Lynn's Food* is the authority on which most courts, including this one, have relied as the basis for exercising authority over FLSA settlements. *See, e.g.*, *Stransky et al. v. HealthONE of Denver, Inc.*, Case No. 11-cv-2888-WJM-MJW, ECF No. 326 (D. Colo., Nov. 10, 2015).

Under *Lynn's Food*, courts employ procedures analogous to Rule 23 class action settlements. *See Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013). One might assume that Rule 23 procedures have been imported to the FLSA settlement context because FLSA claims may be brought as collective actions, which are somewhat similar to class actions. However, such an assumption is probably mistaken. The reasoning of *Lynn's Food* applies equally well to an individual settlement of an FLSA claim as it might to a collective action. *Lynn's Food* concludes that a settlement for less than the full value of the wages and liquidated damages available under the FLSA is essentially a waiver of FLSA rights, and Congress did not intend FLSA claims to be waivable in any sense. 679 F.2d at 1352.

Having concluded as much, *Lynn's Food* might have stopped there and concluded that FLSA settlements are prohibited in all circumstances. However, *Lynn's Food* drew upon a distinction it saw in Supreme Court case law "between a settlement agreement and a stipulated judgment entered in the adversarial context of an employees' suit for FLSA wages." *Id.* at 1353 n.8. Based on this distinction, *Lynn's Food* concluded that "a district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353; *see also id.* at 1355 ("there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions"). Since then, *Lynn's Food* has been both honored as the pronouncement of a court's duty to scrutinize FLSA settlements and yet also partly ignored, since courts do not always enter a stipulated judgment (as opposed to approving the settlement qua settlement).

Whether *Lynn's Food* was correctly decided is certainly open to question. *See, e.g.*, *Manohar v. Sugar Food LLC*, 2017 WL 3173451, at *5 n.1 (D. Colo. July 26, 2017). But no party here has raised that question and the

Court sees no reason to explore it *sua sponte* at this time. Accordingly, the Court will go forward under the assumption that it must approve the Proposed Settlement.

Most recently in the District of Colorado,[2] in *Fails v. Pathway Leasing LLC*, No. 18-cv-00308-CMA-NYW, 2018 WL 6046428 (D. Colo. Nov. 19, 2018), the court thoroughly reviewed *Lynn's Food*, *Ruiz*, and other relevant legal authority to join the holdings of other recent court opinions that, absent exceptional circumstances, the Court need not review and provide approval for FLSA settlements. The *Fails* court first noted that the *Ruiz* court reasoned that "nothing in the text of the FLSA expressly requires court review and approval of settlements," and thereby joined other courts which had held "that an FLSA claim that is genuinely disputed by the employer may be compromised via private settlement between the parties, and . . . such settlement will be legally effective regardless of whether [the settlement is] submitted to or approved by the trial court." *Fails*, 2018 WL 6046428, at *2 (quoting *Ruiz*, ECF No. 132, at 2, 6) (citations omitted).

The *Ruiz* court further noted that "[r]ather than being statutorily mandated, the practice of seeking court approval for all FLSA settlements is rooted in an 11th Circuit decision, which held that 'there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement . . . is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Fails*, 2018 WL 6046428, at *2 (quoting *Ruiz*,

---

[2] The Court notes at least two other recent opinions from within the Tenth Circuit Court of Appeals but outside of the District of Colorado which have joined *Ruiz* in holding that, absent special circumstances, FLSA settlements do not require court approval. *See Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781 (N.D. Okla. Jan. 4, 2019); *Serna v. Bd. of Cty. Comm'rs of Rio Arriba Cty.*, No. 17-cv-196-RB-KBM, 2018 WL 4773361 (D.N.M. Oct. 3, 2018).

ECF No. 132, at 2 (citing *Lynn's Food*, 679 F2d at 1355)). *Fails*, *Ruiz*, and other courts have determined that "the 11th Circuit's holding pertains specifically to the settlement of what did not amount to a bona fide dispute," *Fails*, 2018 WL 6046428, at *2, because "the *Lynn's Food*'s requirement for judicial approval of voluntary settlements was driven by its facts – the employer overreached the employees in inducing them to settle unasserted and unevaluated claims for a small amount of money,"—and because the employees were "largely unaware of the fact that they had rights under the FLSA, and had not been advised by an attorney before signing the agreements; indeed, many did not speak English." *Ruiz*, ECF No. 132, at 4.

The *Fails* court next noted that "[t]he limited prohibition on FLSA settlements that are made in the absence of a bona fide dispute is supported by Supreme Court precedent." 2018 WL 6046428, at *2 (citing *Brooklyn Savings Bank v. O'Neil*, 342 U.S. 697 (1945) (distinguishing between impermissible waivers of FLSA rights and settlements of bona fide disputes). The *Fails* court went on to state:

> Therefore, the 11th Circuit's *Lynn's Food* holding is correct to the extent that it followed the Supreme Court's instruction that settlements of non-bona fide disputes are invalid. It is analytically erroneous, however, to rely on *Lynn's Food*'s reasoning to extend settlement restrictions to bona fide settlements which—as the Supreme Court recognized—are qualitatively distinct. Moreover, as Chief Judge Krieger noted in *Ruiz*, although "[t]here may be a small number of employers who will resort to subterfuge, misdirection, or coercion to improperly induce employees into surrendering their FLSA rights," which both the 11th Circuit and the Supreme Court agree to be prohibited, "the correct solution to address such a narrow problem is not an overbroad rule requiring all FLSA settlements to receive judicial review and approval" as *Lynn's Food* suggests. This Court agrees with Chief Judge Krieger that, in such instances, the proper remedy is "the same remedy used in literally every other context where a settlement is claimed to be coercive, deceptive, or overreaching: upon a proper showing by the employee, the court may set aside the settlement contract and restore the employee's right to seek his or her FLSA remedies directly."

*Fails*, 2018 WL 6046428, at *3 (internal citations omitted).

The *Fails* court further discussed "[t]he logical dissonance of burdening the settlement process of bona fide FLSA disputes with judicial review" based on "the particular nature of FLSA claims." *Id.* Relying heavily on the reasoning of *Ruiz*, the court stated:

> Specifically, the "peculiar opt-in nature of an FLSA collective action anticipates that all of those parties who settle are actively participating and are represented by counsel." Therefore, there is little justification to include FLSA settlements in the narrow range of settlements that require court approval. That range includes settlements in class actions under Fed. R. Civ. P. Rule 23 and settlements involving infants or incompetent individuals. In such cases, "judicial review of compromises is necessary because the parties affected – the class members or the incompetent persons – are not directly before the court nor have they necessarily participated in the decision to settle." FLSA claims, by contrast, are analogous to the broad range of settlements that do not require judicial review such as claims under Title VII, the ADA, and other statutes designed to protect employees against oppression or discrimination.

*Id.* (internal citations omitted).

Finally, the *Fails* court noted that "it is unlikely that Congress intended courts to review bona fide dispute settlements," because "restrictions on private settlement of bona fide disputes cause:"

> [j]udicial caseloads, as well as the workload of the Wage and Hour Administration [to] be swamped with unnecessary disputes, many dubious and with little evidence, that [cannot] be finally settled without approval from either a court or the Secretary of Labor. This surely cannot be what was intended by Congress when the FLSA was passed. In fact, less than ten years after the passage of the FLSA, Congress amended the statute to provide for compromises of then-existing claims involving bona fide disputes. Though Congress could have made the express availability of such compromises prospective rather than purely retrospective, it did not prohibit such compromises.

*Fails*, 2018 WL 6046428, at *3 (quoting *Martinez*, 361 F. Supp. 2d at 630-31).

Thus, the *Fails* court joined the *Ruiz* court and others to hold that "judicial review of bona fide FLSA disputes is not required" in the absence of "evidence of malfeasance or

overreaching in obtaining a settlement agreement," including, for example, where "not all opt-in plaintiffs can be contacted to obtain consent to a settlement agreement or where a party alleges that an agreement does not actually pertain to a bona fide dispute." *Fails*, 2018 WL 6046428, at *3.

To date, the Tenth Circuit Court of Appeals does not appear to have weighed in on this issue. However, neither *Ruiz* nor *Fails* addressed the rationale of the Second Circuit's opinion in *Cheeks*, the one federal appellate court to directly address this issue to date. The question, as framed by the Second Circuit was "whether the parties can enter into a private stipulated dismissal of FLSA claims with prejudice, without the involvement of the district court or [Department of Labor ("DOL")], that may later be enforceable." *Cheeks*, 796 F.3d at 204. The *Cheeks* court first noted the dearth of Supreme Court and Circuit opinions that were directly on point. *Id.* at 202. It then noted that the Eleventh Circuit's decision in *Lynn's Food* and the Fifth Circuit's decision in *Martin*, "[w]hile offering useful guidance," each concerned "whether a private FLSA settlement is enforceable," i.e., a slightly different question. *Id.* at 204. After discussing the tension between various district court decisions on the issue, the *Cheeks* court held:

> Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: "to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." "[T]hese provisions were designed to remedy the evil of overwork by ensuring workers were adequately compensated for long hours, as well as by applying financial pressure on employers to reduce overtime." Thus, "[i]n service of the statute's remedial and humanitarian goals, the Supreme Court consistently has interpreted the Act liberally and afforded its protections exceptionally broad coverage."
> 
> . . . We are mindful of the concerns . . . that the "vast majority of FLSA cases" before [the courts] "are simply too small, and the employer's finances too marginal," for proceeding with litigation to make financial sense if the district

> court rejects the proposed settlement. However, the FLSA is a uniquely protective statute. The burdens [of requiring settlement approval] . . . must be balanced against the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees. . . . [T]he need for such employee protections, even where the employees are represented by counsel, remains.

*Id.* at 206-207 (internal citations omitted).

The tension between *Cheeks*, *Lynn's Food*, *Ruiz*, and *Fails* is likely to grow as more courts wade into this discussion of whether FLSA policy requires approval of such settlements. However, the Court notes that while there is disagreement over whether FLSA settlements *must* be approved by the Court, there does not appear to be disagreement at this time over whether FLSA settlements *may* be approved by the Court. *See, e.g.*, *Thompson*, 2018 WL 2183988, at *2. Thus, given the current uncertainty of the legal landscape, the Court chooses to review the Motion, as requested by the parties, *see* [#109] at 17 n.8, under the factors traditionally considered in the District of Colorado, despite the fact that there does not appear to be any obvious defect in the settlement process or agreement.

In *Baker v. Vail Resorts Management Company*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *3 (D. Colo. Feb. 24, 2014), the Court held pursuant to *Lynn's Foods* that "[t]o approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." To demonstrate those factors, parties must generally describe the nature of and facts at issue in the action, show that the proposed settlement provides adequate compensation to the plaintiff, and provide for reasonable attorney's fees in the proposed settlement. *Id.* at *3-8. The Court addresses each of these factors in turn.

### A. Bona Fide Dispute

The Court must first determine whether the parties have provided sufficient information to determine whether a bona fide dispute exists. *Id.* at *1. "The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement." *Id.* Sufficient information regarding a bona fide dispute consists of the following: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Id.*

The parties have provided sufficient information in support of their assertion that a bona fide dispute exists. *Motion* [#109] at 17-19. In short, "the parties dispute whether [Defendant]—which provides customer support services to companies in the communications, financial services, healthcare, technology, transportation, and retail sectors—inappropriately classified [Team Leaders] as exempt employees not entitled to overtime premiums." *Id.* at 17-18. "Plaintiff alleges that [Team Leaders'] primary duty was performing routine, non-exempt work, including performing routine inspections of agents' calls to track quality-control metrics using standardized forms provided by [Defendant]; running routine reports regarding call data; and completing forms relating to computer-generated metrics," while Defendant asserts that Team Leaders actually "managed large groups of customer agents, trained them, coached them, provided them with feedback, and otherwise performed exempt work." *Id.* at 18. The parties further dispute "whether Plaintiff and the Collective Members' unpaid overtime should be calculated at time-and-a-half their

regular rates or according to the 'fluctuating workweek' method," and they "likely would have disputed the number of hours Plaintiffs worked." *Id.* In light of the foregoing and the parties' briefing, the Court finds that a bona fide dispute exists.

**B.     Fair and Equitable Settlement**

Second, the Court determines whether the proposed settlement is fair and equitable to all parties concerned. *Baker*, 2014 WL 700096, at *2. In making this determination, the Court considers: "(1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.*

Under the terms of the proposed Settlement Agreement, Defendants will pay a total of $500,000 to Plaintiff and the other 482 opt-in Collective Members, exclusive of attorneys' fees. *Motion* [#109] at 13. "Both parties were represented by sophisticated counsel experienced in wage and hour employment litigation." *Id.* at 20 (citations omitted). "Plaintiff's [c]ounsel vigorously prosecuted Plaintiff's claims in this Court for more than a year before reaching settlement." *Id.* (citations omitted). The parties' negotiations lasted more than a year, were "at arm's-length at all times," and were assisted by an independent mediator. *Id.* at 20-21. This case "involves serious questions of law and fact with respect to Plaintiff's claims and [Defendant's] defenses that place the ultimate outcome of the litigation in doubt," including "whether the executive and/or administrative exemptions to the FLSA apply to [Team Leaders]; [and] whether [Defendant] willfully misclassified [Team Leaders] as exempt and/or whether it acted in good faith." *Id.* at 21. "Here, a trial on the

merits would involve significant risk as to both liability and damages." *Id.* at 22. "The value of Collective Members' immediate recovery outweighs the mere possibility of future relief after protracted litigation;" "[t]he settlement provides Collective Members with approximately 65% of [Plaintiff's projected] likely recovery." *Id.* at 22-23. "Finally, Plaintiff and his counsel believe that the proposed Settlement is a fair and reasonable resolution of the claims, especially in light of the relatively low salaries earned by [Team Leaders]—around $26,000 annually." *Id.* at 23. Based on the foregoing, the Court finds that the parties have presented evidence that they fairly and honestly negotiated the settlement.

Next, the Court examines whether the settlement agreement undermines the purpose of the FLSA. *Baker*, 2014 WL 700096, at *2. The purpose of the FLSA is the protection of employees' rights vis-à-vis employers who generally wield superior bargaining power. *Id.* A settlement agreement's compliance with the FLSA depends on these factors: (1) presence of other similarly situated employees; (2) a likelihood that the plaintiffs' circumstances will recur; and (3) whether the defendants had a history of non-compliance with the FLSA. *Id.* (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227,1244 (M.D. Fla. 2010)). "Here, 482 similarly situated [Team Leaders] . . . who earned an average annual salary of approximately $26,000.00, will receive valuable consideration for releasing their claims, which are too small to prosecute individually," and so "[m]any [Team Leaders] would be unlikely to obtain relief without a collective action suit." *Motion* [#109] at 24. Further, "Defendant reclassified the [Team Leader] position to non-exempt in or around November 2016, making it unlikely that misclassification of [Team Leaders] will recur." *Id.* (internal citation omitted). Finally, the settlement agreement "does not contain a confidentiality agreement" and "will be publicly filed on the Court's electronic docket, which

ensures that the terms of the proposed Settlement are public and provides notice to any future plaintiffs of prior allegations of Defendant's improper conduct." *Id.* Thus, the case therefore gives notice to future plaintiffs of prior allegations of defendants' improper conduct. *Baker*, 2014 WL 700096, at *2 (citing *Dees*, 706 F. Supp. 2d at 1244-45 (noting the importance of public access to settlement agreements in FLSA cases)). The Court therefore finds that the Settlement Agreement is fair and equitable.

**C.     Service Payments**

In addition to the $500,000 fund, Plaintiff also asks the Court to "approve Service Payments to recognize the work that he and certain opt-in Plaintiffs performed to advance the litigation and benefit the Collective." *Motion* [#109] at 25. "The reasonableness of a service award to a named Plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement." *Thompson*, 2018 WL 2183988, at *3. However, "reasonable incentive payments have become common for class representatives, and, apparently by analogy, for FLSA named plaintiffs as well." *Id.* (internal quotation marks and citations omitted).

Named Plaintiff David Slaughter seeks approval of (1) $10,000.00 for Plaintiff, (2) $5,250.00 each for opt-in Plaintiffs Robert Gates and Melissa Crawford, (3) $3,250.00 each for opt-in Plaintiffs Janice Meeks and Mary Powers, and (4) $1,500.00 each for opt-in Plaintiffs Melissa Wright and Nicole Lagala. *Motion* [#109] at 24-25. These sums are well within the range of incentive awards which have been deemed reasonable. *See, e.g.*, *Thompson*, 2018 WL 2183988, at *3-4 ($5,000 award) (citing *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) ($7,500 award); *Dorn v. Eddington Sec., Inc.*, 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) ($10,000 award)).

Factors to be considered when determining whether to approve an incentive award include: "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Thompson*, 2018 WL 2183988, at *3 (citing *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010)).

Applying these factors, first, all of the Service Payment recipients "made significant efforts to protect the interests of the Collective," including litigation of this case for nearly two years, help in investigating claims, and extensive cooperation in discovery. *Motion* [#109] at 25-26. Second, all of the actions by the Service Payment recipients "benefitted Collective Members who now stand to gain valuable monetary awards to resolve their claims," including Plaintiff Slaughter's initiation of this action and the provision of valuable information from all Service Payment recipients regarding the Team Leaders' claims. *Id.* at 26. Third, the Service Payment recipients "expended significant time and effort in pursuing" this case, including submitting detailed declarations and otherwise actively participating in discovery." *Id.*

Accordingly, the Court finds that the foregoing information justifies the Service Payments to these Service Payment recipients, and therefore they are approved.

**D.     Reasonable Attorneys' Fees and Costs**

As part of the settlement agreement, Defendant has agreed to pay Plaintiff's attorneys' fees and expenses in the amount of $670,000 ($17,000 of which is allocated to pay the Settlement Administrator). *Motion* [#109] at 27. "The parties negotiated the Fees and Expenses separately from, and after, they negotiated the Collective Members'

settlement amount," and therefore "the amount of the Collective Members' recovery was not reduced to account for Plaintiff's fees, and Plaintiff's Counsel's loyalty to their clients was not undermined by a simultaneous negotiation." *Id.*

The Court determines whether the proposed settlement awards reasonable attorneys' fees. *Baker*, 2014 WL 700096, at *3. To determine a reasonable fee award, the Court must conduct a lodestar calculation as set forth in *Hensley v. Eckerhart*, 641 U.S. 424, 433 (1983). *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2002). A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate. *Hensley*, 641 U.S. at 433. To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (internal quotation marks omitted). Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).

"Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250. "In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) (overruled on other grounds by *Pennsylvania v. Delaware Valley Citizens' Council for Clean*

*Air*, 483 U.S. 711, 725 (1987)). The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment. *Case*, 157 F.3d at 1250 ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

A party seeking an award of attorney's fees must demonstrate that the expenses it seeks are reasonable. *See Dewey v. Hewlett Packard Co.*, No. 05-cv-01482-REB-MJW, 2007 WL 707462, at *1 (D. Colo. Mar. 5, 2007). Therefore, counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Generally, the starting point for any calculation of a reasonable attorney's fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id.* at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017-18 (10th Cir. 1996). The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436-37.

Numerous attorneys and support staff from three law firms worked on this lawsuit for Plaintiff:

| **Name & Position** | **Hours** | **Rate** | **Total Amount** |
|---|---|---|---|
| *Outten & Golden, LLP:* | | | |
| Justin Swartz, Partner | 109.6 | $950 | $104,120.00 |
| Juno E. Turner, Partner | 93.9 | $700 | $65,730.00 |
| Melissa L. Stewart, Partner | 138.8 | $550 | $76,340.00 |
| Daniel Stromberg, Counsel | 50.5 | $650 | $32,825.00 |
| Nantiya Ruan, Counsel | 25.6 | $650 | $16,640.00 |
| Cheryl-Lyn Bentley, Associate | 559.1 | $450 | $251,595.00 |
| Robert Fisher, Associate | 4.8 | $425 | $2,040.00 |

| | | | |
|---|---|---|---|
| Sabine Jean, Associate | 86.8 | $290 | $25,172.00 |
| Danica Li, Staff Attorney | 6.5 | $280 | $1,820.00 |
| Rebecca Sobie, Staff Attorney | 4.5 | $600 | $2,700.00 |
| Brandon E. James, Project Attorney | 23.4 | $400 | $9,360.00 |
| Tara K. Quaglione, Project Attorney | 36.0 | $425 | $15,300.00 |
| Ellyn B. Gendler, Attorney | 7.0 | $280 | $1,960.00 |
| Moira Heiges-Goepfert, Staff Attorney | 18.7 | $380 | $7,106.00 |
| Michael D. Levinson, Attorney | 19.4 | $450 | $8,730.00 |
| Melissa Phatharnavik, Attorney | 10.0 | $260 | $2,600.00 |
| Morgan Marshall-Clark, Staff Attorney | 12.9 | $325 | $4,192.50 |
| Bridget V. Hamill, Attorney | 4.0 | $380 | $1,520.00 |
| All Paralegals | 286.2 | $260 | $74,412.00 |
| *Shavitz Law Group, P.A.:* | | | |
| Christine Duignan, Of Counsel | 4.9 | $600 | $2,940.00 |
| Gregg Shavitz, Partner | 37.9 | $700 | $26,530.00 |
| Logan Pardell, Associate | 78.5 | $300 | $23,550.00 |
| Paolo Meireles, Partner | 190.5 | $500 | $95,250.00 |
| *Lowrey Parady, LLC:* | | | |
| Sarah Parady, Partner | 3.1 | $400 | $1240.00 |
| Mary Jo Lowrey, Partner | 55.7 | $400 | $22,280.00 |
| Carol Zumwalt, Paralegal | 16.3 | $150 | $2,445.00 |

*See* [#110-5, #111-1, #112-1]. Combining all accrued fees for all three firms, therefore, creates a lodestar of $803,985.50.

With respect to costs, Plaintiff's counsel provide the following information:

| **Category** | **Total Amount** |
|---|---|
| *Outten & Golden, LLP:* | |
| Computerized Research | $2,977.33 |
| Court Filing Fees | $666.00 |
| Court Reporter Fees | $1,224.60 |
| Document Management | $3,711.98 |
| FedEx/UPS | $410.23 |
| Meals | $420.68 |
| Postage | $219.44 |
| Printing/Copying | $968.78 |
| Telephone Charges | $163.75 |
| Travel | $10,522.77 |
| *Shavitz Law Group, P.A.:* | |
| Filing and Service Fees | $460.00 |

| | |
|---|---|
| Travel | $4,734.86 |
| Lodging and Meals | $2,851.50 |
| Depositions, Court Reporters, and Transcripts | $4,731.24 |
| Couriers and Postage | $273.03 |
| Mediation Costs | $6,085.00 |

*Lowrey Parady, LLC:*

| | |
|---|---|
| USPS of Certified Wage Demand | $6.59 |
| USPS of Certified Wage Demand (revised) | $6.59 |
| Complaint Filing Fee | $400.00 |
| Process Service (Serve Complaint) | $44.00 |
| Parking at Scheduling Conference | $6.00 |

*See* [#110-6, #111-2, #112-1]. Combining all accrued costs for all three firms, therefore, the amount is $40,884.37. When $17,000 is added for the Settlement Administrator's fee, that amount comes to $57,884.37. Subtracting this amount of costs from the $670,000 in the proposed settlement for attorneys' fees and costs, $612,115.63 is left for total attorneys' fees, which the Court notes is approximately 24% lower than the $803,985.50 lodestar amount of accrued attorneys' fees.

The Court exercises its "discretion in making this equitable judgment" and does not "apportion the fee award mechanically" by considering each claimed expense and determining its reasonableness overall. *Hensley*, 461 U.S. at 436-40 (holding that the Court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc.*, 908 F.2d 675, 684-85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute). Here, the Court has considered the amount in controversy, the length of time required to represent Plaintiff and the Collective Members effectively, the complexity of the case, the value of the legal services to Plaintiff and the Collective Members, and other factors in determining whether the requested fees and costs are reasonable. *See Manohar*, 2017 WL 3173451,

at *5. Based on the undersigned's thirty-three years of combined private and judicial experience and careful consideration of the attorneys' Declarations [#110, #111, #112] and the issues underlying this matter, the Court finds that payment of $670,000.00 for attorneys' fees and costs is reasonable here.

**E.     Conclusion**

Thus, after reviewing the Motion and proposed Settlement Agreement, the Court finds that the litigation involves a bona fide dispute, that the proposed Settlement Agreement is fair and equitable to all parties concerned, and that the proposed settlement awards reasonable attorneys' fees and costs. The Court therefore approves the parties' Settlement Agreement.

The Motion also requests that the Court, upon approval of the Settlement Agreement, dismiss this action with prejudice. *Motion* [#109] at 39. Thus, the Court dismisses this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#109] is **GRANTED**. Accordingly,

IT IS FURTHER **ORDERED** that the $500,000 settlement for Plaintiff and Collective Members, as set forth in the Joint Stipulation of Settlement [#110-1] at 2-15, is **approved.**

IT IS FURTHER **ORDERED** that the Notice [#110-1] at 17-22, is **approved** and shall be sent by the Settlement Administrator to each Collective Member by U.S. Mail within 21 days of the Court's approval of the settlement becoming a final non-appealable order. The Notice shall enclose each Collective Member's settlement check in the amount of his or her pro rata settlement share, less applicable taxes.

IT IS FURTHER **ORDERED** that the following Service Payments are **approved**: (1)

$10,000.00 for Plaintiff, (2) $5,250.00 each for opt-in Plaintiffs Robert Gates and Melissa Crawford, (3) $3,250.00 each for opt-in Plaintiffs Janice Meeks and Mary Powers, and (4) $1,500.00 each for opt-in Plaintiffs Melissa Wright and Nicole Lagala.  *See Motion* [#109] at 24-25.

IT IS FURTHER **ORDERED** that the $670,000 in fees and expenses (including Plaintiff's counsel's attorneys' fees, costs, and the Settlement Administrator's costs of $17,000.00) is **approved**.

IT IS FURTHER **ORDERED** that the terms in the Settlement Agreement [#110-1] are otherwise incorporated into this Order.

IT IS FURTHER **ORDERED** that all claims asserted by Plaintiff in the Collective and Class Action Complaint and Jury Demand [#1] are **DISMISSED with prejudice**.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **CLOSE** this case.

Dated:  February 11, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge